UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TERRY LYMON,<br><br>   Plaintiff,<br><br>v.<br><br>CSX RAILROAD TRANSPORTATION, et al.,<br><br>   Defendants. | Case No. 1:23-CV-346-GSL |

**OPINION AND ORDER**

Terry Lymon ("Plaintiff") is suing CSX Transportation, Inc. ("Defendant") alleging that the company unlawfully discriminated against him by factoring his age and disability into its decision not to hire him. The matter is now before the Court on Defendant's Motion for Summary Judgment [DE 36]. For the following reasons, the Court grants the motion.

I.   **Background**

On July 13, 2022, Plaintiff applied for a freight conductor position with Defendant. [DE 43, ¶ 4] (Def.'s Reply to Pl.'s Stmt. of Material Facts). The primary responsibilities of the position include the safe and efficient switching of railcars, the loading and unloading of railcars, and the coupling and uncoupling of trains. [*Id.* at ¶ 5]. Pursuant to Federal Railroad Administration ("FRA") regulations and Defendant's policies, the position is subject to pre-employment drug testing. [DE 43, ¶ 11]; 49 C.F.R. §§ 217.3, 219.51. In his job application, Plaintiff indicated his understanding that "[his] employment [would be] contingent upon passing both a urine and hair follicle drug test," as well as a background check and medical exam. [DE 43, ¶ 6]; [DE 36, Page 53] (Def.'s MSJ Ex. C). He submitted a resume with his application, which detailed his education and employment history. [DE 36, Pages 55–56]. This included his

twenty-five-year career as an Indiana State Trooper, which ended in 2012, as well as other work experiences before and after. [*Id.*].

On August 3, 2022, Defendant offered Plaintiff the position. [DE 43, ¶ 7]. The letter reiterated that "[the] offer of employment is contingent upon you passing a background check, medical examination(s), and both urine and hair follicle drug tests." [DE 42-1, Pages 1–2] (Pl.'s Ex. A). It also stated that if the medical exams or drug screens are not completed, the offer of employment may be rescinded. [*Id.*]. Plaintiff's tentative start date was October 3, 2022. [*Id.*]. The next day, Plaintiff accepted the offer. [DE 6, ¶ 7] (Compl.); [DE 21-1, ¶ 7] (Am. Compl.).

Immediately following Plaintiff's acceptance, he received an email from Defendant confirming his acceptance and reminding him to "initiate [his] background check and schedule [his] medical exam." [DE 42-1, Page 10] (Pl.'s Ex. F). The email also instructed Plaintiff to refrain from giving notice to his current employer until his start date was confirmed. [*Id.*]. In the following weeks, Plaintiff worked on completing his background check, medical examination, and drug screening. Defendant's drug testing process consists of three steps: collection, testing, and review. [DE 43, ¶ 13]. At the collection stage, applicants provide their testing samples to a third-party company. [*Id.* at ¶ 14]. That company sends the samples to another third party, LabCorp, for testing. [*Id.* at ¶ 15]. Following LabCorp's testing, the results are sent to yet another entity where a Medical Review Officer ("MRO") verifies the results and notifies Defendant. [*Id.* at ¶¶ 16–18].

On August 31, 2022, Plaintiff went to a collection facility where he submitted a urine sample, underwent a medical examination, and filled out a document titled, "Post-Offer Medical Report Form." [DE 42-1, Pages 6–8] (Pl.'s MSJ Resp. Exs. C and D); [DE 43, Pages 12–25] (Def.'s MSJ Reply Ex. 1). The form included a section on mood disorders, wherein Plaintiff

indicated he did not suffer from post-traumatic stress disorder ("PTSD"). [DE 43, Page 18]. The collection facility forwarded the medical examination results and the "Post-Offer Medical Report Form" to Defendant, and it sent the urine sample to LabCorp for testing. LabCorp received the sample on September 2, 2022. [DE 42-1, Pages 6–8]. Though the sample was processed on September 14, 2022, LabCorp did not initially forward their findings to the MRO for review. Defendant, waiting on the results, notified Plaintiff that his results were pending, and followed up with the MRO on November 9, 2022. [*Id.* at Page 16] (Pl.'s Ex. K); [DE 43, Pages 26–27] (Def.'s MSJ Reply Ex. 2). Hearing nothing, Defendant rescinded Plaintiff's offer, since it could not hire him without recording the results of the drug screening. Plaintiff received notice of the recission via an email from Kiara Ansley, from the email address noreplyemail@csx.com, on November 16, 2022. [DE 42-1, Pages 17–26] (Pl.'s Exs. L–P). The email said that his offer was rescinded because he was determined "medically unqualified." [*Id.*]. Plaintiff twice responded to that email seeking the specific reason. [*Id.*].

When he did not receive a response, Plaintiff filed a complaint with the Indiana Civil Rights Commission on December 22, 2022. [DE 6, Pages 4–5]; [DE 21-1, Pages 4–5]. In the form, Plaintiff claimed he was discriminated against because of his age (sixty) and perceived disability (PTSD), "[s]ince information about [his] health and age [were] not disclosed until [his] examination" and the offer was rescinded after the examination. [*Id.*]. A few months later, in April 2023, the MRO reported to Defendant that it received and reviewed LabCorp's results, which indicated that Plaintiff passed the drug test. [DE 42-1, Pages 7–8]. Upon learning this, Defendant, through an Equal Employment Opportunity Commission ("EEOC") employee, offered Plaintiff the job. [DE 43, Page 29]. Plaintiff declined. [*Id.*]. On May 31, 2023, the EEOC

3

issued him a notice of his right to sue on his charges of age and disability discrimination. [DE 6, Page 6]; [DE 21-1, Page 6].

In July 2023, Plaintiff filed this suit in state court alleging that Defendant violated the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA"), the Amendments Act, and Indiana Civil Rights Law because it unlawfully discriminated against him based on his age and perceived disability. [DE 6, Pages 1–3]. On September 14, 2023, Magistrate Judge Susan Collins set March 18, 2024, as the deadline for the parties to complete fact and expert discovery. [DE 18]. Six months later, the case was transferred to this Court. [DE 32]. In April 2024, Defendant, moved for summary judgment, and the Court held oral argument on the motion in September 2024. [DE 36]; [DE 52].

## II.    Legal Standard

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if, under the relevant substantive law, it is outcome determinative. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute over a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of" the evidence that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To survive a properly supported motion for summary judgment, "the nonmoving party must present evidence sufficient to establish a triable issue of fact on all elements of its case." *McAllister v. Innovation Ventures, LLC*, 983 F.3d 963, 969 (7th Cir. 2020).

In deciding a motion for summary judgment, the court may "not weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). Instead, the court's only task is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* (internal citation omitted). If there is no genuine dispute of material fact, then summary judgment is appropriate, and the movant is entitled to judgment as a matter of law. *Id.*

### III. Discussion

Whether by presenting direct evidence or establishing a prima facie case of discrimination, the ultimate inquiry facing the Court is whether there is evidence that would allow a rational jury to conclude that Defendant's adverse actions were motivated by something other than a discriminatory purpose. *See Hester v. Indiana State Dept. of Health*, 726 F.3d 942, 946 (7th Cir. 2013); *see also Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) (clarifying that the legal standard "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action.").

To that end, the Court begins by noting that in its review of the evidence, it found no direct evidence that Plaintiff's job offer was rescinded because of his age, disability, or race. There are no emails, text messages, phone calls, or any other type of evidence that demonstrates Defendant rescinded the employment offer because of Plaintiff's age, disability, or race. *See, e.g.*, [DE 36, Pages 80–84] (Pl.'s Dep. Tr. 14:17–18:23).

The Court's analysis then turns to whether, at this stage, Plaintiff has demonstrated a prima facie case for each of his allegations of discrimination under the *McDonnell Douglas*

5

*Corp. v. Green* burden-shifting test. 411 U.S. 792 (1973). If he establishes a prima facie case, the burden then shifts to Defendant to identify a nondiscriminatory reason for rescinding his offer of employment. *Id.* If such a reason is offered, the burden shifts back to Plaintiff to point to genuine issues of material facts and record evidence that would allow a reasonable jury to find that Defendant's offered reason is pretextual. *Id.*

### A. ADEA

Under the ADEA, it is "unlawful for an employer to fail or refuse to hire" an applicant because that individual is over the age of forty. 29 U.S.C. §§ 623(a)(1), 631(a). Plaintiff can establish a prima facie case of a violation by showing that (1) he is a member of a protected class; (2) he applied for and was qualified for an open position; (3) despite his qualifications, Defendant rejected him for the position; and (4) a similarly situated person outside his protected class was hired for the position instead, or the position remained open. *Sweatt v. Union Pacific R. Co.*, 796 F.3d 701, 709 (7th Cir. 2015).

The first element here is undisputed: Plaintiff was born in 1962, meaning that, by 2002, he was a member of the protected class established by the ADEA. [DE 36, Page 74] (Pl.'s Dep. Tr. 8:3–4). Plaintiff applied for the freight conductor position in 2022, when he was sixty. [*Id.*].

As for the second element, it is undisputed that he applied for the open position and that his educational background and prior work experience qualified him for the job—Defendant extended him an offer. However, those were not the only qualifications for this position. Per the application and the offer letter, applicants for the freight conductor position must also pass a background check, a medical examination, and a drug screening. [DE 36, Pages 6, 53]; [DE 43, ¶¶ 6, 9]. Though Defendant argues that Plaintiff did not pass the drug screening, and was therefore not qualified, that is not true. Plaintiff has pointed to evidence, the LabCorp and MRO

Reports, that LabCorp processed his urine sample in early September. [DE 42-1, Pages 7–8]. LabCorp's failure to report that result to the MRO, so that it timely reached Defendant, does not change the fact that the result was negative.

As for the third element, Defendant does not dispute that Plaintiff suffered an adverse employment action, though the Court notes here that Plaintiff *was offered the job* and was aware of the contingencies attached to the offer. Nevertheless, Defendant's concession here is enough for Plaintiff to establish this element.

The fourth element is the decisive one. The record does not support, nor does Plaintiff identify, any evidence that the position remained open or that a similarly situated person outside his protected class was offered the position. Plaintiff offers no comparators or other related evidence, and there is no allegation in the Complaint that the position remained open or was offered to a similarly situated individual under forty. Finally, Plaintiff cites nothing to rebut Defendant's evidence that it hired eight individuals in Plaintiff's protected class as conductors during the 2022–23 period. [DE 36, Page 172, ¶ 23]. With nothing in the record on this element, Plaintiff fails to establish a prima facie case of age-based discrimination against Defendant.

Even assuming Plaintiff established a prima facie case, he would not survive summary judgment because there is no evidence that would allow a reasonable jury to determine that Defendant's nondiscriminatory reason for rescinding his offer was pretextual. Defendant rescinded Plaintiff's job offer because it never received the results of his drug screening. In support of that, Defendant points to the MRO Report, which shows that the MRO received the LabCorp results on April 3, 2023. [DE 42-1, Pages 7–8]. Given Defendant's process for drug screening, it would not have received the results sooner than the MRO's verification of them.

With this nondiscriminatory reason established, the burden then shifts to Plaintiff to point to evidence that could show this reason was pretextual. In other words, Plaintiff must identify evidence that would allow a reasonable jury to decide that Defendant made "'more than a mistake'" but that it offered a "'lie, a specifically phony reason'" for the adverse action. *Brooks v. Avancez*, 39 F.4th 424, 435 (7th Cir. 2022) (cleaned up). If Defendant honestly believed that Plaintiff did not meet the qualifications, then those reasons are not pretextual even if Defendant's belief was incorrect. *See id.* (citations omitted). Plaintiff must demonstrate that Defendant's reason was pretext by a preponderance of the evidence. *Id.* Since Plaintiff offers no evidence tending to show Defendant's reason for recission was pretextual, he fails to meet this burden. Plaintiff's citations to the evidentiary record do not provide a basis that the recission was anything other than a mistake by Defendant.

Federal Rule of Civil Procedure 56(c)(1) requires Plaintiff to cite to particular parts of materials in the record or show that the materials cited do not establish the absence or presence of a genuine dispute, in order to support an assertion that a fact cannot be or is genuinely disputed. This Court's Local Rules facilitate this process by asking the moving party to file a Statement of Material Facts, wherein the facts are numbered and cite to supporting evidence. N.D. Ind. L.R. 56-1(a)(3). The nonmoving party is asked to file a Response to the Statement of Material Facts, which includes a verbatim restatement of the moving party's facts and, following each of moving party's facts, a correspondingly numbered response that cites to the record for support. N.D. Ind. L.R. 56-1(b)(2).

Here, Plaintiff made one filing: a combined statement of disputed facts and a response brief.[1] *See* [DE 41]. Plaintiff's statement of facts begins with a recitation of the first eighteen

---

[1] Portions of the brief appeared to have been copied and pasted from Defendant's brief, with Plaintiff only removing or adding the negatives and making other minor edits. *E.g., compare*, [DE 37, Page 5–6] (Def.'s

8

facts from Defendant's Statement of Material Facts, but none of these facts includes a response or citation to the record from Plaintiff. [*Id.*]. Thus, the Court deems those facts to be admitted. *See* Fed. R. Civ. P. 56(e)(2). Then, starting with paragraph 19, Plaintiff inserts his affidavit as numbered paragraphs. [DE 41, Page 3]. Though the affidavit cites to record evidence presented by Plaintiff, this response does not comport with the Local Rules. Nevertheless, in its Reply to Plaintiff's Statement of Disputed Facts, Defendant responds to Plaintiff's noncompliant version of the Statement of Material Facts by responding to each in turn. [DE 43].

Notwithstanding this basis to deem all of Defendant's Statements of Material Facts as admitted, the Court reviewed the record citations in Plaintiff's affidavit, and the record as a whole. In its review, the Court searched for evidence that would allow a reasonable jury to find that Defendant's reason for rescinding the contract was pretextual, or that discrimination otherwise occurred. There is none. All the record shows is that Defendant's belief that Plaintiff did not qualify because of a failed drug screen was mistaken.

Plaintiff contends that his age and disability was not known until after his medical examination, which explains the recission of his offer. [DE 6, Pages 2, 5]; [DE 21, Pages 2, 5]. Yet his resume, submitted long before his medical exam, indicates that he is over forty. [DE 36, Pages 50–56]. It includes at least twenty-five years as a law enforcement officer in Indiana, ending in 2012. [*Id.*]. He applied for this position at issue here ten years later in 2022. [*Id.*]. A reasonable jury could not find that Defendant did not know until the medical examination that Plaintiff was over forty.

---

MSJ) ("Where, as here, a plaintiff has no direct evidence of discrimination, courts apply the burden-shifting framework articulated in *McDonnell Douglas*[.]") *with* [DE 41, Pages 6–7] (Pl.'s Response) (Plaintiff has no direct evidence of discrimination. Courts apply the burden-shifting framework articulated in *McDonnell Douglas*[.]).

Moreover, as soon as Defendant became aware of the mistake regarding the reporting of the drug screen results, they offered Plaintiff the job, which he declined. [DE 43, Pages 28–30] (Def.'s MSJ Reply Ex. 3). Plaintiff has not identified anything in the record that would show Defendant knew of the results before April 3, 2022. Though Plaintiff cites to the MRO Report for the fact that his drug screen was tested in mid-September, he fails to offer any evidence indicating that Defendant knew about those results at that time. Defendant contends, and Plaintiff does not dispute, that the MRO Report shows that the MRO notified Defendant of the drug screen results on April 3, 2022. Defendant also submitted evidence that before rescinding Plaintiff's offer, it followed-up with the MRO. [DE 43, Page 27]. As for Plaintiff, he offered the MRO Report to support the contention that he passed the drug screen on September 14, 2022. [DE 42-1, Pages 6–8]. This fails to address the portion of the Report that shows that LabCorp did not report those results to the MRO until April 3, 2023. [*Id.*]. Before then, no results were reported to Defendant, and Plaintiff has offered no evidence suggesting so. Thus, having never received results, from Defendant's perspective, Plaintiff never properly completed the test and was therefore unqualified. The only evidence Plaintiff offers that is different from Defendant is a set of his own emails, responding to the noreplyemail@csx.com address, asking why his offer was rescinded. [DE 42-1] (Pl.'s Exs. K–P).

None of the foregoing evidence demonstrates a genuine dispute of material fact, nor would any of it allow for a reasonable juror to find that Defendant's mistaken rescission of his offer was pretextual. For that reason, in addition to Plaintiff's failure to state a prima facie case, Defendant's motion for summary judgment as to the ADEA claim is granted.

### B. ADA

The ADA prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures" and hiring. 42 U.S.C. § 12112(a). To prove a violation under this provision, Plaintiff must establish that (1) he is disabled; (2) he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (3) he suffered an adverse employment action; and (4) the adverse action was caused by his disability. *Kurtzhals v. Cnty. of Dunn*, 969 F.3d 725, 728 (7th Cir. 2020).

Plaintiff fails to establish a prima facie case of discrimination based on disability or point to evidence that would allow a reasonable jury to find in his favor. Plaintiff alleges that his "perceived" disability served as the basis for his termination. [DE 6]. Plaintiff contends that since his medical examination revealed information about his age and health *after* he accepted the offer, that information must be the basis for the recission. [*Id.*].

There is no evidence in the record that Defendant could have known about Plaintiff's PTSD before rescinding the offer. There was an opportunity for Plaintiff to indicate in his "Post-Offer Medical Report Form" that he suffered from PTSD, but he indicated that he did not. [DE 43, Page 18]. Plaintiff signed that report certifying that the information that he provided was "truthful and complete." [*Id.* at Page 13]. Now, via his affidavit, Plaintiff submits that he suffers from PTSD. [DE 42-1, Page 36, ¶ 3] (Pl.'s Ex. U). With no explanation for the discrepancy in the record, the Court does not consider that part of the affidavit relevant, since there is no specification as to when the PTSD started. If Plaintiff suffered from PTSD at the time he applied for the position, the utility of the claim in his affidavit that he currently suffers from PTSD would be limited. In that context, the PTSD claim in the affidavit would appear to be an issue of fact "conjured out of nothing" in order to survive summary judgment. *James v. Hale*, 959 F.3d 307,

316 (7th Cir. 2020). If the record does not reflect that Defendant had knowledge of the disability before it rescinded the employment offer, a reasonable jury would be unable to find that the recission was based upon that disability. Accordingly, Defendant is entitled to summary judgment on Plaintiff's ADA claim.

### C. Title VII

Plaintiff's Complaint seeks relief under Title VII, but that is the only mention of it. The Complaint does not state a claim for racial discrimination, it does not allege any facts relating to racial discrimination, and when listing the alleged reasons for discrimination it omits race. [DE 6, ¶ 10] ("Information about Plaintiff's health was not disclosed until his examination and Defendants refused to release its findings. Plaintiff alleges same is due to his age and perceived disability."). Moreover, Plaintiff does not indicate on the Indiana Civil Rights Complaint attached to the civil complaint that race discrimination was part of the decision to rescind the offer. [DE 6, Pages 4–5]. He did not check the box indicating race discrimination, nor did his statement of allegations include any facts supporting a claim of racial discrimination. [*Id.*]. Plaintiff's failure to exhaust his administrative remedies precludes him from relief on a claim of racial discrimination in this matter. *See Cervantes v. Ardagh Group*, 914 F.3d 560, 565–66 (7th Cir. 2019). For these reasons, the Court does not analyze whether Plaintiff demonstrates a prima facie case of race discrimination. Defendant's motion for summary judgment on Plaintiff's claim of racial discrimination, to the extent there is one, is granted.

### D. Additional Matters

Finally, the Court must address the propriety of the parties. Plaintiff's initial complaint, filed in state court, names two defendants: "CSX Railroad Transportation" and "Headquarters: CSX Railroad Transportation." [DE 6]. As pointed out by Defendant's Corporate Disclosure

12

Statement [DE 3], Answer [DE 8], Amended Corporate Disclosure Statement [DE 9], and many other filings, the proper defendant is CSX Transportation, Inc. At a pretrial conference, Magistrate Judge Collins directed Plaintiff to amend the complaint to reflect this. [DE 17]. Though it was filed late, Magistrate Judge Collins granted Plaintiff's Motion to Amend Complaint for Damages [DE 21]. [DE 22]. Plaintiff never filed the amended complaint, which was attached to the motion to amend. *See* [DE 21-1].

The Court considers the Amended Complaint [DE 21-1] the operative complaint. Aside from properly naming CSX Transportation, Inc. as the defendant, the Amended Complaint is identical to the initial complaint in all material respects. Defendant CSX Transportation, Inc. need not file an amended answer; its answer already identifies itself as the proper party. This clarification ensures proper enforcement of this Opinion and Order, by confirming the parties subject to this judgment.

## Conclusion

The Court **DIRECTS** the Clerk of Court to amend the docket to reflect that the sole defendant is CSX Transportation, Inc.

The Court hereby **GRANTS** Defendant's Motion for Summary Judgment [DE 36].

The Court **DIRECTS** the Clerk of Court to enter judgment against Plaintiff Terry Lymon and in favor of Defendant CSX Transportation, Inc. Plaintiff takes nothing by his Complaint.

SO ORDERED.

ENTERED: March 13, 2025

/s/ GRETCHEN S. LUND
Judge
United States District Court